1  TONY LOPRESTI, County Counsel (S.B. #289269)
   XAVIER M. BRANDWAJN, Deputy County Counsel (S.B. #246218)
2  JOSÉ L. MARTIN, Deputy County Counsel (S.B. #203709)
   OFFICE OF THE COUNTY COUNSEL
3  70 West Hedding Street, East Wing, Ninth Floor
   San José, California 95110-1770
4  Telephone: (408) 299-5900
   Facsimile: (408) 292-7240
5
6  Attorneys for Defendant
   COUNTY OF SANTA CLARA
7
8                     UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
                         (San Francisco Division)
10
11
12  JANE DOE, individually and on behalf of others      No. 23CV04411WHO
    similarly situated,
13                                                        **DEFENDANT COUNTY OF SANTA**
                  Plaintiffs,                             **CLARA'S NOTICE OF MOTION AND**
14                                                        **MOTION TO DISMISS PLAINTIFF'S**
    v.                                                    **FOURTH AMENDED COMPLAINT**
15
    THE COUNTY OF SANTA CLARA d/b/a                       Date:    October 29, 2024
16  SANTA CLARA VALLEY MEDICAL                            Time:    2:00 p.m.
    CENTER, et al.,                                       Crtrm:   2, 17th Floor
17                                                        Judge:   The Honorable William H. Orrick
                  Defendant.
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **October 29, 2024**, at **2:00 p.m.** or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor of the U.S. District Courthouse located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William H. Orrick presiding, defendant County of Santa Clara (the "County") will and hereby does move this Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing with prejudice all claims asserted by plaintiff Jane Doe, on behalf of a purported class of plaintiffs, in the Fourth Amended Complaint (herein, the "4AC"). This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the pleadings and files in this action, and on such oral argument as the Court may permit.

The County moves to dismiss the 4AC on the grounds that the Court lacks subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and Plaintiff's Counts One, Four, Five, and Six do not state a cause of action as a matter of law (Fed. R. Civ. P. 12(b)(6)).

Dated:  August 30, 2024

Respectfully submitted,

TONY LOPRESTI
County Counsel

By:  */s/ Xavier M. Brandwajn*
XAVIER M. BRANDWAJN
Deputy County Counsel

Attorneys for Defendant
COUNTY OF SANTA CLARA

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

        A.      Plaintiff's Allegations............................................................................ 2

        B.      Procedural Background ........................................................................ 2

III.    ARGUMENT .................................................................................................. 3

        A.      Legal Standards...................................................................................... 3

        B.      The Court Should Dismiss This Case for Lack of Subject Matter Jurisdiction...... 3

        C.      Plaintiff Does Not State a Federal Law Claim Against the County...................... 9

                1.      The Legal Backdrop ................................................................... 9

                2.      How District Courts in this Circuit Have Approached this Issue.............11

                3.      Plaintiff's Claims in this Case ..................................................12

        D.      Plaintiff's Claims Suffer from Additional Defects .................................13

                1.      Plaintiff cannot state a cause of action under the CDAFA
                        against the County ...................................................................13

                        a.      The CDAFA Does Not Apply to the County .............................13

                        b.      Plaintiff Does Not Have Standing to Bring a CDAFA Claim.......14

                                i.  The "impact on computer" allegations .....................................15

                                ii. The "time and money to investigate and mitigate"
                                    allegations.................................................................15

                                iii. Plaintiff may not seek relief based on new allegations about
                                     a mobile app ..............................................................17

                2.      Plaintiff cannot state a Civil Code § 1798.82 cause of action
                        against the County ...................................................................18

                3.      Plaintiff has not stated a viable California Government
                        Code § 815.6 claim.................................................................20

                        a.      42 U.S.C. § 1320d-6, 45 C.F.R. § 164.508,
                                and 45 C.F.R. § 164.502........................................................20

                        b.      California Civil Code sections 56.10 and 56.101 .......................22

                        c.      California Civil Code section 1798.100....................................23

Defendant County of Santa Clara's Notice of Motion and
Motion to Dismiss Plaintiff's Fourth Amended Complaint

23CV04411WHO

d. California Civil Code sections 1709 and 1710 ............................23

e. Civil Code section 1798.82 and 18 U.S.C. 2510 et seq. ...............24

4. Plaintiff May Not Recover Punitive Damages against the County ..........24

IV. CONCLUSION ..........................................................................................................25

Defendant County of Santa Clara's Notice of Motion and
Motion to Dismiss Plaintiff's Fourth Amended Complaint

23CV04411WHO

1

## <u>**TABLE OF AUTHORITIES**</u>

Page

2

3

## **CASES**

4

*Abbott v. Village of Winthrop Harbor,*
     205 F.3d 976 (7th Cir. 2000) ........................................................................................9, 10

5

6

*Adams v. City of Battle Creek,*
     250 F.3d 980 (6th Cir. 2001) .................................................................................................10

7

*Agardi v. City & Cnty. of San Francisco,*
     No. 16-cv-03315-JCS, 2016 U.S. Dist. LEXIS 121717 (N.D. Cal. Sep. 8, 2016) ............. 5

8

9

*Alexander v. Sandoval,*
     532 U.S. 275 (2001) ................................................................................................................22

10

*Arbaugh v. Y&H Corp.,*
     546 U.S. 500 (2006) .................................................................................................................. 4

11

12

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) .................................................................................................................. 3

13

*Baker v. County of Sonoma,*
     No. C-08-03433 EDL, 2009 U.S. Dist. LEXIS 14831 (N.D. Cal. Feb. 10, 2009) ............23

14

15

*Belinda K. v. Baldovinos,*
     No. C 10-02507 PSG, 2011 U.S. Dist. LEXIS 11692 (N.D. Cal. Feb. 1, 2011) ...............20

16

*Bell Atl. Corp. v. Twombly,*
     550 U.S. 544 (2007) .................................................................................................................. 3

17

18

*Brennon B. v. Superior Court,*
     13 Cal. 5th 662 (2022) .............................................................................................................19

19

*City of San Jose v. Superior Court,*
     12 Cal. 3d 447 (1974) .............................................................................................................. 7

20

21

*Comm. for Immigrant Rights v. Cnty. of Sonoma,*
     644 F. Supp. 2d 1177 (N.D. Cal. 2009) ..........................................................................25

22

23

*Cook v. Cnty. of Contra Costa,*
     No. 15-cv-05099-TEH, 2016 U.S. Dist. LEXIS 31904 (N.D. Cal. Mar. 10, 2016) ......8, 18

24

*Cottle v. Plaid Inc.,*
     536 F. Supp. 3d 461 (N.D. Cal. 2021) ............................................................................15

25

*County of Los Angeles v. Superior Court,*
     102 Cal. App. 4th 627 (2002) ................................................................................................20

26

27

*Cunnington v. Tootell,*
     No. 18-CV-01530 LHK (PR), 2018 U.S. Dist. LEXIS 85981 (N.D. Cal. May 21,
     2018) .......................................................................................................................................22

28

Defendant County of Santa Clara's Notice of Motion and
Motion to Dismiss Plaintiff's Fourth Amended Complaint

23CV04411WHO

*Delux Pub. Charter, LLC v. Cnty. of Orange,*
  No. SACV 20-2344 JVS (KESx), 2022 U.S. Dist. LEXIS 235563 (C.D. Cal. Oct. 31,
  2022) ...........................................................................................................................................21

*Dep't of Corps. v. Superior Court,*
  153 Cal. App. 4th 916 (2007)....................................................................................................21

*Doe v. Google LLC,*
  No. 23-cv-024310-VC, __ F. Supp. 3d __, 2024 U.S. Dist. LEXIS 129037 (N.D. Cal.
  July 22, 2024)........................................................................................................................16, 17

*Doe v. Regents of the Univ. of Cal.,*
  672 F. Supp. 3d 813 (N.D. Cal. 2023) ..................................................................................13, 18

*Doe v. Regents of the Univ. of Cal.,*
  No. 21-cv-09605-LB, 2022 U.S. Dist. LEXIS 49087 (N.D. Cal. Mar. 20, 2022).............25

*Donohue v. State of Cal.,*
  178 Cal. App. 3d 795 (1986)........................................................................................................7

*Eastburn v. Reg'l Fire Protection Auth.,*
  31 Cal. 4th 1175 (2003) .............................................................................................................23

*Federated Univ. Police Officers' Ass'n v. Regents of the Univ. of Cal.,*
  No. SACV 15-00137-JLS (RNBx), 2015 U.S. Dist. LEXIS 99147 (C.D. Cal. July 29,
  2015) ............................................................................................................................................12

*Haggis v. City of Los Angeles,*
  22 Cal. 4th 490 (2000) ..........................................................................................................20, 21

*Head v. Cnty. of Sacramento,*
  No. 2:19-cv-01663-TLN-CKD, 2020 U.S. Dist. LEXIS 110029 (E.D. Cal. June 23,
  2020) ............................................................................................................................................12

*Hernandez v. City of Stockton,*
  90 Cal. App. 5th 1222 (2023) ...................................................................................................7, 15

*Huling v. City of Los Banos*, 869 F. Supp. 2d 1139, 1154 (E.D. Cal. 2012)...............................22

*In re Apple Inc. Device Performance Litig.,*
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ......................................................................................16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig. v. Micron Tech., Inc.,*
  546 F.3d 981 (9th Cir. 2008)......................................................................................................... 3

*In re Gilead Scis. Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008).....................................................................................................3, 6

*In re Meta Healthcare Pixel Litig.,*
  No. 22-CV-03580-WHO, 2024 U.S. Dist. LEXIS 15391 (N.D. Cal. Jan. 29, 2024)........16

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018)........................................................................................................ 7

/ /

*King v. Great Am. Chicken Corp.*,
   903 F.3d 875 (9th Cir. 2018) ........................................................................................... 4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................................................................ 4

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ........................................................................................... 8

*Lockhart v. Cnty. of Los Angeles*,
   2007 U.S. Dist. LEXIS 119102 (C.D. Cal. Oct. 16, 2007) .............................................24

*Los Angeles Unified Sch. Dist. v. Superior Court*,
   14 Cal. 5th 758 (2023) ...................................................................................................24

*MacDonald v. Calif.*,
   230 Cal. App. 3d 319 (1991) ..........................................................................................20

*Medina v. Riverside*,
   No. CV 06-4144 ABC (Ex), 2006 U.S. Dist. LEXIS 114098 (C.D. Cal. Dec. 1, 2006) ...11

*Moor v. Alameda Cnty.*,
   411 U.S. 693 (1973) ........................................................................................................ 5

*Nelson v. State of Cal.*,
   139 Cal. App. 3d 72 (1982) ............................................................................................. 7

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................................14

*Nowak v. XAPO, Inc.*,
   No. 5:20-cv-03643-BLF, 2020 U.S. Dist. LEXIS 219575 (N.D. Cal. Nov. 20, 2020) .....16

*Perez v. Nidek Co.*,
   657 F. Supp. 2d 1156 (S.D. Cal. 2009) ........................................................................... 4

*Poli v. Mt. Valley's Health Ctrs., Inc.*,
   No. 2:05-cv-2015-GEB-KJM, 2006 U.S. Dist. LEXIS 2559 (E.D. Cal. Jan. 11, 2006) ...22

*Rodriguez v. Instagram, LLC*,
   No. C 12-06482 WHA, 2013 U.S. Dist. LEXIS 98627 (N.D. Cal. July 15, 2013).........4, 6

*Roy v. Cnty. of Los Angeles*,
   No. CV 12-09012-BRO (FFMx), 2015 U.S. Dist. LEXIS 187387 (C.D. Cal. Nov. 20,
   2015) ..............................................................................................................................23

*S.E.C. v. McCarthy*,
   322 F.3d 650 (9th Cir. 2003) ..........................................................................................14

*Sacramento Mun. Util. Dist. v. Cnty. of Solano*,
   54 Cal. App. 4th 1163 (1997) .........................................................................................19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ......................................................................................... 3

*Seitz v. City of Elgin*,
    719 F.3d 654 (7th Cir. 2013)....................................................................................10, 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).......................................................................................... 8

*State Dept. of State Hosps. v. Superior Court*,
    61 Cal. 4th 339 (2015) ....................................................................................................20

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*,
    34 Cal. 4th 441 (2004) .................................................................................................... 8

*Stone v. Alameda Health Sys.*,
    2024 Cal. LEXIS 4425 (Aug. 15, 2024) ........................................................................13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..........................................................................................23

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .........................................................................16

*Tovar v. Zuchowski*,
    982 F.3d 631 (9th Cir. 2020)..........................................................................................14

*UFCW Local 1500 Pension Fund v. Mayer*,
    895 F.3d 695 (9th Cir. 2018)..........................................................................................22

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
    766 F.3d 1002 (9th Cir. 2014)........................................................................................24

*United States v. Streich*,
    560 F.3d 926 (9th Cir. 2009)..........................................................................................22

*Univ. of Colo. Hosp. Auth.  v. Denver Publ. Co.*,
    340 F. Supp. 2d 1142 (D. Colo. 2004)...........................................................................22

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003)........................................................................................ 3

*Wells v. One2One Learning Found.*,
    39 Cal. 4th 1164 (2006) ...........................................................................................13, 18

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(h)(3).................................................................................................................... 4

Rule 15(a)(2)....................................................................................................................17

**FEDERAL STATUTES**

18 U.S.C. § 2510(6) ...................................................................................................10, 11

18 U.S.C. § 2511(2)(d)....................................................................................................13

18 U.S.C. § 2511(3)(a) ...................................................................................................11

18 U.S.C. § 2520(a) ...................................................................................................9, 10

28 U.S.C. § 1332(d)(2) ...................................................................................................4

28 U.S.C. § 1332(d)(4) ...................................................................................................5

ECPA of 1986, Pub. L. No. 99-508, §§ 102, 103, 100 Stat. 1848 ...........................9, 11

USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 223(a)(1), 115 Stat. 272 ...........10

## CALIFORNIA STATUTES

Cal. Gov. Code §818 ...................................................................................................24

Cal. Gov. Code § 911.2(a) ...........................................................................................9

Cal. Pen. Code § 502(a) ...............................................................................................14

Cal. Pen. Code § 502(b) .........................................................................................13, 14

Cal. Pen. Code § 502(c) ...............................................................................................13

Cal. Pen. Code § 502(h)(1) ....................................................................................14, 17

Cal. Pen. Code § 502(h)(2) ...........................................................................................14

Cal. Civ. Code § 1709 ...................................................................................................23

Cal. Civ. Code § 1798.80(a) .........................................................................................19

Cal. Civ. Code § 1798.80(e) ....................................................................................18, 19

Cal. Civ. Code § 1798.81.5(a)(1) .................................................................................19

Cal. Civ. Code § 1798.81.5(d)(4) .................................................................................19

Cal. Civ. Code § 1798.82(a) .........................................................................................18

Cal. Civ. Code § 1798.82(i)(1) .....................................................................................19

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      This litigation is not like the dozens of website tracking technology cases filed in this District

4   and other courts across the country.  Yet, in her fifth pleading effort, Plaintiff continues to import

5   allegations and claims from other cases without due consideration of the County of Santa Clara's

6   ("County") specific website configurations or the County's unique status as a government entity.  As

7   a result, several defects in the 4AC warrant the relief sought in this Motion.

8      First, the Court should dismiss this case under FRCP 12(b)(1) for lack of subject-matter

9   jurisdiction.  The sole asserted basis for federal court jurisdiction is the Class Action Fairness Act,

10   28 U.S.C. § 1332(d) (CAFA).  But Plaintiff's allegations—both in her complaint and in her

11   government claim to the County—facially show that she is a California citizen suing a California

12   local government, on behalf of herself and only California citizens, based on alleged privacy

13   violations arising from electronic communications sent and received in California.  In a home state

14   controversy like this, the CAFA mandates dismissal.

15      Second, Plaintiff's first-ever federal claim in this case—alleging a violation of the Federal

16   Wiretap Act (FWA), 18 U.S.C. § 2520, predicated on violations of section 2511(1) of the Electronic

17   Communications Privacy Act (ECPA)—does not state a viable theory of liability against the County.

18   Based on other circuits' detailed analysis of the statutory text and legislative history, the weight of

19   district court authority in the Ninth Circuit holds that government entities are not subject to liability

20   under the theories Plaintiff has alleged.  This late-added and infirm claim should be dismissed and

21   accordingly cannot supply subject-matter jurisdiction.  Given the absence of federal jurisdiction, the

22   4AC should be dismissed without need to address the following other defects.

23      Third, Plaintiff still cannot state a violation of the California Comprehensive Data Access

24   and Fraud Act (CDAFA), Cal. Penal Code § 502.  The statute does not apply to government entities.

25   And Plaintiff's revamped allegations do not identify actionable damages sufficient to confer

26   standing.  Setting aside her reliance on claimed damages the Court has already rejected, Plaintiff's

27   new allegations of damage to her devices are threadbare, internally inconsistent, and barred by her

28   failure to disclose any such facts or theory in her government claim to the County.  Supporting her

new allegations about devices, Plaintiff now improperly seeks relief based on a third-party mobile app to access the myHealth Online (MHO) patient portal—even though any such claim is untimely and barred by Plaintiff's failure to provide any notice of this theory in her government claim.

Fourth, as a matter of law, the County cannot be liable under California Civil Code section 1798.82 of the California Customer Records Act (CCRA).  The statutory text and the legislative record make clear that this statute does not apply to public agencies.

Fifth, Plaintiff's new claim under California Government Code section 815.6, predicated on a litany of allegedly mandatory duties, fails for several reasons.  This claim cannot Trojan Horse a private right of action for violations of the Health Insurance Portability and Accountability Act (HIPAA) that Congress has legislated does not exist.  To the extent Plaintiff's section 815.6 claim merely rests on her other claims, it is properly dismissed as duplicative.  And the other sources of allegedly mandatory duties do not impose such duties on the County as a matter of law.

Finally, Plaintiff improperly seeks punitive or exemplary damages, which, as a matter of hornbook law, are not recoverable from public entities.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

The County incorporates by reference the summary of Plaintiff's allegations in the Court's July 8, 2024 Order on the County's last motion to dismiss.  ECF 64.

### B.    Procedural Background

On August 25, 2023, Plaintiff filed her original complaint, naming only the County as a defendant.  ECF 1.  On October 5, 2023, she amended her complaint to add Meta Platforms, Inc. ("Meta") as a defendant.  ECF 17.  But on November 7, 2023, Plaintiff and Meta filed—and the Court granted—a joint motion to sever Plaintiff's claims against Meta and to consolidate them with the other Meta Pixel-related cases over which this Court presides.  ECF 36, 37.

On February 13, 2024, with the Court's leave, Plaintiff filed her Second Amended Complaint (SAC).  ECF 45, 46.  The County moved to dismiss the SAC.  ECF 47.  On July 8, 2024, the Court issued an order granting in part, with leave to amend, and denying in part the motion.  ECF 64.

On July 29, 2024, Plaintiff filed her Third Amended Complaint.  ECF 65.  And on August 9,

1  2024, Plaintiff filed her 4AC, with stipulated leave of court.  ECF 67, 68.  The 4AC asserts six

2  Counts for violation of: (1) the FWA, 18 U.S.C. § 2520, based on an alleged violation of 18 U.S.C. §

3  2511(1) of the ECPA; (2)-(3) the California Confidentiality of Medical Information Act (CMIA),

4  Cal. Civ. Code §§ 56.10 and 56.101; (4) the CDAFA, Cal. Penal Code § 502; (5) the CCRA, Cal.

5  Civ. Code § 1798.82; and (6) Cal. Gov. Code § 815.6.  ECF 68.

6  ### III.  ARGUMENT

7  **A.  Legal Standards**

8  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

9  pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

10  1136, 1139 (9th Cir. 2003).  "In a facial attack, the challenger asserts that the allegations contained

11  in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v.*

12  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Dismissal for lack of subject matter jurisdiction is

13  appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to

14  establish subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust*

15  *Litig. v. Micron Tech., Inc.*, 546 F.3d 981, 984-85 (9th Cir. 2008).

16  Under FRCP 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which

17  relief can be granted.  The plaintiff must allege "enough facts to state a claim to relief that is

18  plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

19  plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that

20  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

21  (citation omitted).  The alleged facts must be sufficient to "raise a right to relief above the

22  speculative level."  *Twombly*, 550 U.S. at 555.  But the court need not accept as true "allegations that

23  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

24  *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

25  **B.  The Court Should Dismiss This Case for Lack of Subject Matter Jurisdiction**

26  Plaintiff's sole asserted basis for this Court's subject matter jurisdiction is the CAFA, 28

27  U.S.C. § 1332(d).  ECF 68 at ¶ 11.  Plaintiff's pleadings and government claim, however, facially

28  allege an exception to CAFA jurisdiction that mandates dismissal.

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

At all times, the plaintiff bears the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To establish federal subject-matter jurisdiction under the CAFA, a plaintiff must demonstrate that (1) the amount-in-controversy exceeds five million dollars and (2) the parties are "minimally diverse." *Rodriguez v. Instagram, LLC*, No. C 12-06482 WHA, 2013 U.S. Dist. LEXIS 98627, *5 (N.D. Cal. July 15, 2013). For the latter, the CAFA requires the following:

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). Here, Plaintiff alleges (A), in conclusory fashion. ECF 68 at ¶ 11.

But a defendant may challenge subject-matter jurisdiction at any time by motion under Rule 12(b)(1). In that situation, the defendant bears the burden of establishing exceptions to CAFA jurisdiction. *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1162 (S.D. Cal. 2009); *see also King v. Great Am. Chicken Corp.*, 903 F.3d 875, 877 (9th Cir. 2018) ("The statute includes . . . exceptions that require a federal district court to decline jurisdiction even if the above requirements were met.").

One such exception to CAFA jurisdiction prescribes that "[d]istrict courts '*shall* decline to exercise jurisdiction' under Section 1332(d)(2) where 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Rodriguez*, 2013 U.S. Dist. LEXIS 98627 at *6 (quoting 28 U.S.C. § 1332(d)(4)(B) (emphasis added)). "This is known as the home-state controversy exception to CAFA." *Id.* Specifically, the CAFA provides:

A district court **shall decline to exercise jurisdiction** under paragraph (2)—
(A)
   (i) over a class action in which—
     (I) greater than two-thirds of the members of all proposed plaintiff classes in
       the aggregate are citizens of the State in which the action was originally
       filed
     (II) at least 1 defendant is a defendant—
      (aa) from whom significant relief is sought by members of the plaintiff
        class;
      (bb) whose alleged conduct forms a significant basis for the claims asserted
        by the proposed plaintiff class; and
      (cc) who is a citizen of the State in which the action was originally filed; and
     (III) principal injuries resulting from the alleged conduct or any related
       conduct of each defendant were incurred in the State in which the action
       was originally filed; and
   (ii) during the 3-year period preceding the filing of that class action, no other
     class action has been filed asserting the same or similar factual allegations
     against any of the defendants on behalf of the same or other persons; **or**
  (B) two-thirds or more of the members of all proposed plaintiff classes in the
    aggregate, and the primary defendants, are citizens of the State in which the
    action was originally filed.

28 U.S.C. § 1332(d)(4) (emphasis added).  Here, from the face of the complaint, both nonexclusive

scenarios in which the home-state controversy exception applies—labeled (A) and (B) in section

1332(d)(4)—are met, thereby warranting dismissal for lack of subject-matter jurisdiction.

First, scenario (B) is met because, as alleged, *the proposed plaintiff class includes only

California citizens*.  The very first sentence of the 4AC identifies Plaintiff as a California citizen and

the sole representative of a purported class "of all other current California citizens similarly

situated."  ECF 68 at 1:1-6; *see also id.* at ¶ 7.  Every version of the complaint has alleged the same.

*See* ECF 1 at 1:1-6 and ¶ 7; ECF 46 at 1:1-6 and ¶ 7; *see also* 28 U.S.C. § 1332(d)(7) ("Citizenship

of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2)

through (6) as of the date of filing of the complaint or amended complaint . . . .").  The complaint

also reaffirms that it seeks to vindicate the rights of only "citizens of California."  ECF 68 at ¶ 3;

ECF 1 at ¶ 3.  In addition, the County is the only defendant in the case—in the current posture, just

as when this case was originally filed.  *See* ECF 1, 68.  The County is a citizen of California for

diversity purposes.  *See, e.g.*, *Agardi v. City & Cnty. of San Francisco*, No. 16-cv-03315-JCS, 2016

U.S. Dist. LEXIS 121717, *4 (N.D. Cal. Sep. 8, 2016) (dismissing action for lack of subject matter

jurisdiction) (citing *Moor v. Alameda Cnty.*, 411 U.S. 693, 721 (1973) (holding that a California

/ /

1   county is a citizen of California for purposes of diversity jurisdiction)).  Thus, both the entire

2   plaintiff class and the only defendant are California citizens.

3          Second, scenario (A) is also met.  The two-thirds California citizen requirement for the

4   proposed class is met for the same reasons as discussed above.  The County is a California citizen

5   and the sole defendant from whom significant relief is sought and whose alleged conduct forms a

6   significant basis for the claims asserted, as the entire complaint makes clear.  *See generally* ECF 1;

7   ECF 68.  The principal injuries resulting from the County's alleged actions were also incurred in

8   California, according to Plaintiff's own allegations.  *See, e.g.*, ECF 68 at ¶ 93 ("In this way, Santa

9   Clara aided Facebook to read, learn, and exploit the contents of *Plaintiff's and Class Members'*

10  *communications that they sent (and Santa Clara received) within the state of California*") (emphasis

11  added); ECF 1 at ¶ 82 (same).  And during the three-year period before this case, no other class

12  action has been filed against the County asserting the same or similar factual allegations.  In sum,

13  this action was brought by a California citizen, for herself and other California citizens, against a

14  California local government, and about electronic communications allegedly sent and received in

15  California.  The home state controversy exception plainly applies.

16         Ostensibly to plead around this facial absence of diversity (in both scenarios A and B

17  described above), Plaintiff alleges—again without supporting facts—that "at least one Class Member

18  is a citizen of a different state from Defendants."  ECF 68 at ¶ 11; ECF 1 at ¶ 11.  But this

19  conclusory allegation of minimal diversity may be disregarded not only from a pleading perspective,

20  *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055, but also in view of Plaintiff's limiting

21  characterizations of her own claims—that they seek to vindicate only the alleged rights of California

22  citizens.  Notably, this District has joined others in holding that "where plaintiff's own

23  characterizations demonstrate the action's local nature, no further discovery or proof is necessary."

24  *Rodriguez*, 2013 U.S. Dist. LEXIS 98627 at **7-8 (collecting cases from other districts).  In

25  *Rodriguez*, Judge Alsup found, based on how the operative pleading defined the proposed plaintiff

26  class, that "a consumer class defined as California residents is, by and large, a class of California

27  domiciles and that the aberrated case wherein a California resident is domiciled elsewhere is so rare

28  as to fall far short of the one-third needed to defeat the exception."  *Id.* at *7.  And because the

6

Defendant County of Santa Clara's Notice of Motion and                    23CV04411WHO
Motion to Dismiss Plaintiff's Fourth Amended Complaint

1    plaintiff had "already had one opportunity to amend," Judge Alsup dismissed the case without leave

2    to amend. *Id.* at *10.  Similarly, here, dismissal is warranted because the proposed class—as a

3    matter of law—is *limited to California citizens*.

4           This conclusion is further supported by the allegations in Plaintiff's government claim.

5    Before she could sue the County, Plaintiff was legally required to present to the County, and did

6    present, a government claim under section 945.4 of the California Government Code.  County's

7    Request for Judicial Notice, concurrently filed ("RJN"), Ex. A.[1]  The purpose of the government

8    claim is "to provide the public entity sufficient information to enable it to adequately investigate

9    claims and to settle them, if appropriate, without the expense of litigation."  *City of San Jose v.*

10   *Superior Court*, 12 Cal. 3d 447, 455 (1974).  A government claim submitted on behalf of a purported

11   class of plaintiffs must also "provide the name, address, and other specified information concerning

12   the representative plaintiff *and then sufficient information to identify and make ascertainable the*

13   *class itself*."  *Id.* at 457 (emphasis added).  Further, the facts in the government claim must

14   correspond with the facts alleged in the civil complaint.  *See, e.g.*, *Nelson v. State of Cal.*, 139 Cal.

15   App. 3d 72, 79 (1982) (affirming dismissal of amended complaint because that pleading, which

16   alleged the doctors' failure to summon immediate and competent medical care, "represented a

17   radical departure" and an "entirely different theory" from plaintiff's government claim, which

18   alleged an injury because of the doctors' failure to diagnose and treat plaintiff).[2]  Where a cause of

19   action in the civil complaint is based on an entirely different set of facts, where there is a shift in

20   allegations, and where liability is premised on acts committed at different times or by different

21

22   [1]  Plaintiff alleges her compliance with this prerequisite of her lawsuit.  ECF 68 at ¶¶ 14-16; ECF 1
     at ¶¶ 14-16.  Her government claim is therefore incorporated by reference in her complaint because

23   it is alleged therein and necessarily forms the basis of her claims.  *See, e.g.*, *Khoja v. Orexigen*
     *Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018) (holding that when a "'plaintiff refers

24   extensively to the document or the document forms the basis of the plaintiff's claim,'" the court may
     treat that document as part of the complaint itself, and a court "may assume [an incorporated

25   document's] contents are true for purposes of a motion to dismiss") (quotations omitted).

26   [2]  *See also Donohue v. State of Cal.*, 178 Cal. App. 3d 795, 804 (1986) ("permitting an uninsured
     motorist to take a driving test [the only theory alleged in the tort claim] is not the factual equivalent

27   of the failure to control or direct the motorist in the course of his examination;" thus, the second
     theory was barred by the Tort Claims Act); *Hernandez v. City of Stockton*, 90 Cal. App. 5th 1222,

28   1234 (2023) (finding action "barred because liability is premised on an entirely different factual
     basis than that stated in the government claim").

Defendant County of Santa Clara's Notice of Motion and                                    23CV04411WHO
Motion to Dismiss Plaintiff's Fourth Amended Complaint

1    persons than those described in the government claim, the civil complaint is typically barred.

2    *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004).

3         Here, Plaintiff's government claim confirms she seeks relief "both on her behalf and on

4    behalf of *all similarly situated California citizens*."[3]  RJN, Ex. A at 2 (emphasis added).  Nothing in

5    her claim discloses any relief sought on behalf of any *non-California citizens*—much less any facts

6    suggesting, or allowing the County to deduce, that such out-of-state citizens comprised more than a

7    third of any proposed class.  *See id.*  Simply put, a government claim that purports to identify a

8    proposed class of California citizens does not put the public entity on notice of a putative class of

9    California citizens *and non-California citizens*, much less one where more non-California citizens

10   account for more than a third of the class.  Plaintiff's government claim—which is a prerequisite to,

11   and delineates the scope of, the instant case—thus further supports the allegations in Plaintiff's

12   complaint that this action seeks to vindicate the alleged rights of only California citizens.

13        Given these limiting representations that the proposed class consists solely of California

14   citizens, Plaintiff's lone and conclusory allegation of minimal diversity cannot stand, let alone justify

15   CAFA jurisdiction.  This is because a district court may disregard "allegations contradicting

16   documents that are referenced in the complaint or that are properly subject to judicial notice."  *Lazy*

17   *Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *see also Sprewell v. Golden State*

18   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true

19   allegations that contradict matters properly subject to judicial notice.").  Moreover, no discovery or

20   further pleading amendment would permit Plaintiff to subsequently claim that the proposed class

21   includes citizens of states other than California because any such material deviation from the scope

22   of her government claim would be barred and untimely.  *See, e.g.*, *Cook v. Cnty. of Contra Costa*,

23   No. 15-cv-05099-TEH, 2016 U.S. Dist. LEXIS 31904, **7-10 (N.D. Cal. Mar. 10, 2016) (dismissing

24   amended pleading where the facts alleged "diverge too greatly from the facts alleged in Plaintiff's

---

25

26   [3]  By noting the statements in Plaintiff's government claim—and, solely for purposes of this Motion,
27   accepting them as true—the County does not concede that Plaintiff's government claim fully or
     substantially complies with all applicable California requirements for class government claims.  The
28   County hereby expressly reserves its rights to raise any such deficiencies at the appropriate juncture.

tort claim, such that the County was not on notice to investigate possible claims" alleged in the amended pleading, and denying leave to amend "[b]ecause the statute of limitations has expired on the filing of Plaintiff's tort claim"); Cal. Gov. Code § 911.2(a) (claims for personal injury and property damage must be presented no later than six months after the accrual of the cause of action).

Therefore, by Plaintiff's own allegations in both her government claim and her complaint, more than two-thirds of the proposed plaintiff class in this case are California citizens—indeed, the entire class is California citizens.  As such, there is not even minimal diversity with the County. Because the home-state controversy exception plainly and facially applies, this Court should conclude that it lacks subject-matter jurisdiction and dismiss this case.

Absent CAFA jurisdiction, there must be another basis of federal subject-matter jurisdiction for this case to remain in this Court.  Presumably, Plaintiff will point to her new 18 U.S.C. § 2520(a) FWA claim.  But, as discussed below, that claim is unavailing.

**C.     Plaintiff Does Not State a Federal Law Claim Against the County**

The Court granted Plaintiff leave to add an 18 U.S.C. § 2520(a) claim and invited "a more expansive discussion of the split in caselaw" on whether such a claim lies against governmental entities, including whether "the weight of authority in the Ninth Circuit would preclude it."  ECF 64 at 12.  Plaintiff asserts a section 2520(a) claim, based only on alleged violations of section 2511(1) of the ECPA.  ECF 68 at ¶¶ 347, 354, 355, 358, 359, and 382.  But, as a matter of law, the County cannot be liable under Plaintiff's theory, as the statutes' text, history, and interpretation establish.

**1.     The Legal Backdrop**

Section 2520(a) provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the *person or entity, other than the United States*, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a) (emphasis added).  Initially, the statute allowed recovery against only a "person."  *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 980 (7th Cir. 2000).  But in 1986, Congress extended it to "any person or entity" who committed the violation.  ECPA of 1986, Pub. L. No. 99-508, § 103, 100 Stat. 1848, 1853-54; *see also Seitz v. City of Elgin*, 719 F.3d 654, 656 (7th

9

1   Cir. 2013).  In 2001, the PATRIOT Act again amended the statute, resulting in the current wording

2   of a "person or entity, other than the United States."  USA PATRIOT Act of 2001, Pub. L. No. 107-

3   56, § 223(a)(1), 115 Stat. 272, 293; *see also Seitz*, 719 F.3d at 656.

4        Importantly, the FWA defines a "person" as "any employee, or agent of the United States or

5   any State or political subdivision thereof, and any individual partnership, association, joint stock

6   company, trust, or corporation."  18 U.S.C. § 2510(6).  "The plain text of that definition—which has

7   remained unchanged since passage of the original act in 1968—does not extend to government units.

8   Instead, it reaches only employees or agents of a government."  *Seitz*, 719 F.3d at 656.  "Thus, as

9   originally composed in 1968, the FWA created a cause of action only against 'persons' and then

10  excluded municipalities from the definition of 'persons.'  It created no cause of action against

11  municipalities or any other governmental unit."  *Id.*

12       Citing the 1986 amendment's addition of the word "entity" to include governmental units, as

13  well as the PATRIOT Act's subsequent modifier of "other than the United States" to underscore that

14  the phrase "person or entity" encompasses government units, some courts have found municipalities

15  amenable to suit under Section 2520.  *See, e.g.*, *Adams v. City of Battle Creek*, 250 F.3d 980, 985

16  (6th Cir. 2001); *see also Seitz*, 719 F.3d at 657 (collecting and summarizing cases).  But, as the *Seitz*

17  court's analysis shows, this is too cursory an interpretation of the text and structure of the statute.

18  Notably, "Section 2520 itself creates no substantive rights.  Rather, it simply provides a cause of

19  action to vindicate rights identified in other portions of the FWA, specifically communications

20  'intercepted, disclosed, or intentionally used *in violation of this chapter.*'"  *Seitz*, 719 F.3d at 657

21  (quoting 18 U.S.C. § 2520(a)) (emphasis in original).  Therefore, a court "must look to the scope and

22  nature of the specific substantive right plaintiffs accuse defendants of violating to determine whether

23  plaintiffs may assert that right against a municipality."  *Id.* at 657-58.

24       In *Seitz*, the plaintiffs accused the City of Elgin of violating sections 2511(1)(c)-(d).  *Id.* at

25  658.  Section 2511(1), however, "protects only against actions taken by a 'person' as defined in the

26  statute, which does not include municipalities."  *Id.* (citing 18 U.S.C. § 2510(6); *Abbott*, 205 F.3d at

27  980).  "Only a 'person' can violate § 2511(1).  And because § 2520 creates a cause of action only for

28  'violation[s] of' the FWA, it necessarily follows that § 2520 confers a cause of action to enforce

10

§ 2511 only against persons as defined by the statute." *Id*.  Thus, the *Seitz* court concluded, nothing in the 1986 amendments or the PATRIOT Act expanded the scope of the term "person" as used in section 2511.  *Id.*  In further support of its conclusion, the court noted that the FWA creates a substantive right against a governmental entity only in section 2511(3)(a)—which applies to a "person or entity" and was added by the same 1986 amendment that inserted "or entity" into section 2520.  *Id.*; *see also* 18 U.S.C. § 2511(3)(a); Pub. L.  No. 99-508, § 102, 100 Stat. at 1853.  Therefore, the court concluded that the FWA permits suit against governmental units "only for substantive provisions that identify an 'entity' as a potential violator of that provision."  *Seitz*, 719 F.3d at 660.

The *Adams* case, and the district courts following that competing view, "did not consider that § 2520 creates no substantive rights and did not consider whether other parts of the FWA created substantive rights enforceable against an entity."  *Seitz*, 719 F.3d at 659.  "Those cases simply ended the inquiry with the conclusion that governmental units are 'entities' under § 2520 and therefore were amenable to suit for all violations of the FWA."  *Id*.  In so doing, however, *Adams* relied heavily on the legislative history of another, related statute, the Stored Communications Act (SCA), 18 U.S.C. § 2707.  *Id*.  Like § 2520, § 2707 does not itself create substantive rights but, instead, confers a private right of action for violations defined elsewhere in the SCA.  *Id*.  But unlike § 2511(1), which creates a right against only a "person," the pertinent substantive provision of the SCA creates a right more broadly against "whoever" violates the stated terms.  18 U.S.C. § 2701(a); *see also Seitz*, 719 F.3d at 659.  "Thus, *Adams* inappropriately consulted the legislative history of a statute that does not truly parallel the FWA."  *Seitz*, 719 F.3d at 659-60.

**2.**     **How District Courts in this Circuit Have Approached this Issue**

Only three decisions by courts in the Ninth Circuit appear to have directly addressed the circumstances under which a governmental entity may be sued under the FWA:

- In *Medina v. Riverside*, the Central District relied on the 2001 PATRIOT Act amendment to section 2520(a) and the reasoning in *Adams* to find that the "federal wiretap statutes are applicable to counties and other governmental entities."  No. CV 06-4144 ABC (Ex), 2006 U.S. Dist. LEXIS 114098, **10-15 (C.D. Cal. Dec. 1, 2006).  But the *Medina* court did not consider the different statutory language about potential violators in the subparts of section 2511.

1    •    In *Federated Univ. Police Officers' Ass'n v. Regents of the Univ. of Cal.*, the Central

2    District found the intervening *Seitz* court's "more detailed analysis of the various provisions of the

3    Wiretap Act" to be "convincing" and, therefore, "adopt[ed] *Seitz*'s holding that § 2520 provides no

4    cause of action against a municipality for violations of § 2511(1)."  No. SACV 15-00137-JLS

5    (RNBx), 2015 U.S. Dist. LEXIS 99147, **24-25 (C.D. Cal. July 29, 2015).  The court thus

6    dismissed the plaintiffs' FWA cause of action with prejudice.  *Id.* at *25.

7    •    In *Head v. Cnty. of Sacramento*, the Eastern District dismissed a FWA claim against

8    the County of Sacramento without leave to amend, finding "the Seventh Circuit's analysis

9    persuasive and follow[ing] the Central District Court of California in adopting *Seitz*'s holding."  No.

10   2:19-cv-01663-TLN-CKD, 2020 U.S. Dist. LEXIS 110029, *6 (E.D. Cal. June 23, 2020).

11       In sum, since *Seitz*, every district court in this Circuit has followed *Seitz*'s reasoning and

12   holding on when a governmental entity may be sued under the FWA.  So, too, should this Court.

13       **3.    Plaintiff's Claims in this Case**

14       With prior pleading opportunities and notice of the foregoing legal landscape, Plaintiff

15   asserts a section 2520(a) claim against the County based only on alleged violations of section

16   2511(1)—just like the plaintiffs in *Seitz*.  ECF 68 at ¶¶ 354 and 358 (alleging violations of

17   § 2511(1)(c)), ¶¶ 355, 358, and 359 (alleging violations of § 2511(1)(a) and/or (1)(d)).  This claim

18   should suffer the same fate as the claim in *Seitz*.  Section 2511(1) creates substantive rights only

19   against a "person," which does not include governmental entities for the reasons discussed above.

20   *See* Part III(C)(1), *supra*.  The County is thus not amenable to suit under any such theory that applies

21   only to a "person."  *See Seitz*, 719 F.3d at 658-60; *Federated Univ. Police Officers' Ass'n*, 2015 U.S.

22   Dist. LEXIS 99147 at **24-25; *Head*, 2020 U.S. Dist. LEXIS 110029 at *7.

23       Plaintiff further alleges that the County cannot claim the "party to the communication"

24   exemption in section 2511(2)(d) of the FWA.  ECF 68 at ¶¶ 366-379.  That section provides:

25       It shall not be unlawful under this chapter [18 USCS §§ 2510 et seq.] for *a
         person* not acting under color of law to intercept a wire, oral, or electronic

26       communication where such *person* is a party to the communication or where
         one of the parties to the communication has given prior consent to such

27       interception unless such communication is intercepted for the purpose of
         committing any criminal or tortious act in violation of the Constitution or

28       laws of the United States or of any State.

12

Defendant County of Santa Clara's Notice of Motion and                                          23CV04411WHO
Motion to Dismiss Plaintiff's Fourth Amended Complaint

1  18 U.S.C. § 2511(2)(d) (emphasis added).  This section is also facially limited to violations by a

2  "person," which, again, the County is not.  As such, this subpart of section 2511 cannot create a

3  substantive right against the County, either, for the same reasons addressed previously.

4          In short, Plaintiff's newly advanced FWA claim runs counter to the weight of relevant

5  authority and should be dismissed without further leave to amend.  Absent CAFA jurisdiction or a

6  viable federal law claim, this Court lacks subject-matter jurisdiction over this case.

7  **D.    Plaintiff's Claims Suffer from Additional Defects**

8          If the Court agrees that it lacks subject matter jurisdiction over this case, it need not reach the

9  additional defects, discussed below, in Plaintiff's other causes of action.

10         **1.    Plaintiff cannot state a cause of action under the CDAFA against the County**

11         Plaintiff's Count Four, alleging violations of the CDAFA, fails for two reasons.  First,

12  CDAFA does not apply to public entities like the County.  Second, Plaintiff does not plead

13  actionable damages sufficient to confer standing under the statute.

14                 **a.    The CDAFA Does Not Apply to the County**

15         Plaintiff alleges violations of Section 502, subdivisions (c)(1)(A), (c)(1)(B), (c)(2), (c)(3),

16  (c)(6), (c)(7), and (c)(8), of the CDAFA.  ECF 68 at ¶¶ 406-413.  These subdivisions provide:

17  "Except as provided in subdivision (h), *any person* who commits any of the following acts is guilty

18  of a public offense . . . ."  Cal. Pen. Code § 502(c) (emphasis added).  But, as a matter of statutory

19  interpretation, the County is not a "person" within the meaning of the statute.

20         First, "'absent express words to the contrary, governmental agencies are not included within

21  the general words of a statute.'"  *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 817 (N.D.

22  Cal. 2023) (quoting *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1192 (2006)).[4]  Here, the

23  general words "any person" are not modified or altered by any express words to the contrary.

24  Indeed, the CDAFA does not define the term "person."  Cal. Pen. Code § 502(b).  And the fact that

25  subdivision (h) excludes from liability "any acts which are committed by a person within the scope

26

27  [4]  The California Supreme Court recently reaffirmed that "[t]his principle is deeply embedded in our
    state's jurisprudence."  *Stone v. Alameda Health Sys.*, 2024 Cal. LEXIS 4425, *7 (Aug. 15, 2024)
28  (slip op.)

1   of lawful employment," including "acts which are reasonably necessary to the performance of their

2   work assignment," further supports the conclusion that "person" has its plain and ordinary meaning

3   of a natural person, not a government.  *Id.* § 502(h)(1); *see also* § 502(h)(2).

4          Second, "[i]t is a well-established canon of statutory interpretation that the use of different

5   words or terms within a statute demonstrates that Congress intended to convey a different meaning

6   for those words." *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (citing cases); *see also*

7   *Tovar v. Zuchowski*, 982 F.3d 631, 635 (9th Cir. 2020) ("'Where Congress includes particular

8   language in one section of a statute but omits it in another section of the same Act, it is generally

9   presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'")

10  (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009)).  This canon applies here.  The use of the terms

11  "governmental agencies" and "local government" throughout Section 502—describing the owner or

12  operator of computer systems sought to be protected, *but not included as a "person" who may be*

13  *held liable in subdivision (c)*—further shows that the Legislature did not intend "person" to include

14  governmental entities.  *See* Cal. Pen. Code §§ 502(a) (describing the Legislature's intent), (b)(6)

15  (defining "government computer system"), (c)(10) (creating liability for "any person" who "disrupts

16  . . . government computer services or denies or causes the denial of government computer services to

17  an authorized user of a government computer, computer system, or computer network").

18         Because the County falls outside the definition of "person" under the CDAFA, this claim

19  should be dismissed with prejudice on this ground alone.

20                    **b.       Plaintiff Does Not Have Standing to Bring a CDAFA Claim**

21         Plaintiff lacks standing under the CDAFA because she fails to allege any cognizable damage

22  or loss.  The CDAFA permits a civil action only by a person "who suffers damage or loss by reason

23  of a violation."  Cal. Pen. Code § 502(e)(1).  It also permits recovery of "[c]ompensatory damages

24  [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify

25  that a computer system, computer network, computer program, or data was or was not altered,

26  damaged, or deleted by the access."  *Id.*  Plaintiff claims the following CDAFA "damages":

27  //

28  //

1

(a) Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

2

(b) Plaintiff's and Class Members' computers had less available storage space than they normally would have;

3

4

(c) Plaintiff's and Class Members' computers worked more slowly than they normally would have;

5

(d) Plaintiff and Class Members were forced to spend time and money to investigate and mitigate the contamination of their computing devices by Santa Clara;

6

(e) Defendant eroded the essential confidential nature of the doctor-patient relationship;

7

8

(f) Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

9

10

(g) Plaintiff and Class Members did not get the full value of the medical services for which they paid, which included Santa Clara's duty to maintain confidentiality; and

11

12

(h) Defendant's actions diminished the value of Plaintiff and Class Members' personal information.

13

ECF 68 at ¶ 414. Relying on *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021), this

14

Court has already found that the alleged "damages" listed in subsections (a), (e), (f), (g), and (h) do

15

not—as a matter of law—allege a loss that is cognizable under the CDAFA. ECF 64 at 12-13.

16

Accordingly, Plaintiff cannot premise standing on these previously dismissed grounds. Plaintiff's

17

new damages allegations in subsections (b), (c), and (d) are also insufficient, as shown below.

18

i.    The "impact on computer" allegations

19

In subsections (b) and (c), Plaintiff now alleges that, because of the County's conduct, her

20

devices had less available "storage space" and worked "more slowly than they normally would

21

have." ECF 68 at ¶¶ 414(b), (c). These newly added allegations are insufficient for several reasons.

22

First, these allegations fall outside the scope of Plaintiff's government claim and are thus

23

untimely and barred. Plaintiff's government claim needed to state sufficient facts to enable the

24

County to adequately understand the bounds of, investigate, and potentially settle her claim. *See*

25

Part III(B), *supra*. But nothing in Plaintiff's government claim discloses any impairment,

26

commandeering, or damage to her devices. Instead, she only claimed *personal* harm—the allegedly

27

lost confidentiality of her information. RJN, Ex. A. She is barred from now relying on a different—

28

and untimely—theory based on *property* damage. *See, e.g.*, *Hernandez*, 90 Cal. App. 5th at 1234.

1       Second, although Plaintiff's CDAFA claim "sound[s] in fraud" and "is subject to Rule 9(b)

2  pleading standards," Plaintiff does not offer any well-pleaded facts—much less with the required

3  particularity—to support her vague assertions of damage to her devices.  *Nowak v. XAPO, Inc.*, No.

4  5:20-cv-03643-BLF, 2020 U.S. Dist. LEXIS 219575, *13 (N.D. Cal. Nov. 20, 2020) (citing *In re*

5  *Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019)).  The 4AC does

6  not describe whether and how Plaintiff's computers lost any functionality.  *See, e.g.*, *Ticketmaster*

7  *L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (dismissing CDAFA

8  claim, alleging that "Defendants' bots place[d] a heavy load on Ticketmaster's system," where

9  "Ticketmaster's systems continued to function as intended, without damage or alteration, while the

10  bots operated").  To the contrary, Plaintiff asserts that "pixels *do not appear to alter the function of*

11  *the communication device* on which they are surreptitiously installed."  ECF 68 at ¶ 108 (emphasis

12  added).  Moreover, Plaintiff alleges that the "source code operates invisibly in the background" (*id.*

13  at ¶ 106) and does not assert any facts about how the use of her computer was impacted in any way.

14  Plaintiff's allegations are thus conclusory, internally inconsistent, and ultimately implausible.

15      This District recently found that similarly conclusory "allegations of lost storage, diskspace,

16  and performance" are insufficient to constitute an injury in fact under the CDAFA.  *See Doe v.*

17  *Google LLC*, No. 23-cv-024310-VC, __ F. Supp. 3d __, 2024 U.S. Dist. LEXIS 129037, **28-30

18  (N.D. Cal. July 22, 2024) (dismissing CDAFA claim because, *inter alia*, plaintiffs "offer[ed] no

19  factual support" for allegations that the placement of cookies on their devices "reduced storage, disk

20  space, and performance," and "it is not obvious how the presence on one's computer of the cookies

21  from the [healthcare] providers' websites would result in any cognizable reduction in storage, disk

22  space, or performance").  Plaintiff's allegations are deficient for similar reasons.[5]

23          ii.     The "time and money to investigate and mitigate" allegations

24      Plaintiff's allegations that she was "forced" to "spend time and money to investigate and

25

26

_____

27  [5]  This Court has found CDAFA standing where the allegations were sufficient to identify a
"measurable impact" on a plaintiff's devices.  *In re Meta Healthcare Pixel Litig.*, No. 22-CV-03580-
28  WHO, 2024 U.S. Dist. LEXIS 15391, *12 (N.D. Cal. Jan. 29, 2024).  Here, however, Plaintiff's bare
allegations do not plausibly state a functional or measurable impact on her devices.

1   mitigate the contamination" are also unsupported and thus insufficient.  ECF 68 at ¶ 414(d).

2   Investigation costs compensable under the CDAFA are limited to those "reasonably and necessarily

3   incurred . . . to verify that a computer system, computer network, computer program, or data was or

4   was not altered, damaged, or deleted by the access."  Cal. Penal Code § 502(e)(1).  Setting aside

5   what Plaintiff alleges she did to "investigate" and "mitigate" purported violations, she offers no facts

6   about her investigation into whether the County "altered, damaged, or deleted" her data, much less

7   any costs incurred through such an investigation.  *See* ECF 68 at ¶ 414(d).  This District has recently

8   found that similarly conclusory allegations that plaintiffs "expended time and resources to

9   investigate" are insufficient to confer CDAFA standing.  *See Doe v. Google LLC*, 2024 U.S. Dist.

10  LEXIS 129037 at **30-31 (dismissing CDAFA claim, in part, because "there is no allegation that

11  the investigation was undertaken to verify that [Plaintiffs'] 'data was or was not altered, damaged, or

12  deleted'").  Plaintiff's inadequate allegations in the 4AC warrant the same result.

13                    iii.    Plaintiff may not seek relief based on new allegations about a mobile app

14          Ostensibly related to her new CDAFA allegations about her devices, but in fact also to

15  support her *other* claims,[6] Plaintiff now alleges for the first time that the County is liable for website

16  tracking technologies deployed on a "mobile patient portal app."  ECF 68 at ¶ 34; *see also* ¶¶ 35,

17  353(c), 356, 375, 448.  Plaintiff is not entitled to this newly sought relief for several reasons.

18          First, Plaintiff does not allege that she—or anyone in the purported class—has ever

19  downloaded and used the mobile app, nor has she identified what supposedly protected information

20  she contends was captured and disclosed through the app.  She has thus not stated any injury to

21  confer Article III standing to seek relief based on the app.

22          Second, even if Plaintiff had standing, she is barred from seeking relief on this entirely

23  different theory that was never previously alleged in this case or timely disclosed in her government

24  claim.  *See* Part III(B), *supra*.  Her government claim form asserts liability by the County only for

25  "surreptitious tracking code *on its website*," not in any mobile app.  RJN, Ex. A at 1, ¶ 7 (emphasis

26  _____

27  [6]  Plaintiff also added the mobile app as a basis for alleged violations of Civil Code section 56.101,
    even though the Court did not grant her leave to amend those allegations.  *See* ECF 64; ECF 68 at
28  ¶ 375.  The Court should reject this unauthorized amendment.  Fed. R. Civ. P. 15(a)(2).

17

Defendant County of Santa Clara's Notice of Motion and                                    23CV04411WHO
Motion to Dismiss Plaintiff's Fourth Amended Complaint

1   added).  Plaintiff repeats the same throughout her claim.  *Id.* at 3 ("Santa Clara Valley Medical

2   Center discloses its patients' PHI and PII through the deployment of various digital marketing and

3   automatic rerouting tools embedded *on its website and patient portal* . . . [and] violated Claimant's

4   rights by capturing her search information *through its website and online patient portal* . . . .")

5   (emphasis added).  There is no mention of Plaintiff's mobile devices, her installation and use of a

6   mobile app, or tracking technologies embedded therein.  Plaintiff's new theory of liability[7] is

7   therefore untimely and barred.  *See, e.g.*, *Cook*, 2016 U.S. Dist. LEXIS 31904 at **7-10.

8           Third, even if this untimely and new content were accepted, it merely alleges a separate

9   theory of damages based on the value of Plaintiff's allegedly protected information, which the Court

10  correctly rejected as insufficient to confer CDAFA standing.  *See* ECF 64 at 13.

11          Therefore, the Court should dismiss Plaintiff's CDAFA claim with prejudice.

12          **2.      Plaintiff cannot state a Civil Code § 1798.82 cause of action against the County**

13          Count Five alleges the County violated Section 1798.82(a) of the CCRA, which provides:

14                  A *person or business* that conducts business in California, and that owns or
                    licenses computerized data that includes personal information, shall
15                  disclose a breach of the security of the system following discovery or
                    notification of the breach in the security of the data to a resident of
16                  California . . . whose unencrypted personal information was, or is
17                  reasonably believed to have been, acquired by an unauthorized person.

18  Cal. Civ. Code § 1798.82(a) (emphasis added); *see* ECF 68 at ¶¶ 419-433.  But because the County

19  is neither a "person" nor a "business," it cannot be held liable under section 1798.82.

20          First, the County is not a "person."  Because the CCRA does not define "a person," this term

21  is a general word that does not apply to government entities absent express words to the contrary.

22  *See Regents*, 672 F. Supp. 3d at 817; *Wells*, 39 Cal. 4th at 1192.  The CCRA's provisions and

23  structure suggest that the term "person" means "an individual," i.e., a natural person.  *See* Cal. Civ.

24  Code § 1798.80(e) (defining "personal information" to mean "any information that identifies, relates

25  to, describes, or is capable of being associated with, a particular individual").  Nothing in the CCRA

26

27

28  _____
    [7]  The newness of these allegations is also evident in the judicially noticeable fact that a third party,
    not the County, releases the app in question, as the most cursory investigation would show.

states or suggests that "person" includes a government agency.

Similarly, the County is also facially not a "business," which, under the CCRA, means:

> a sole proprietorship, partnership, corporation, association, or other group, however organized and whether or not organized to operate at a profit, including a financial institution organized, chartered, or holding a license or authorization certificate under the law of this state, any other state, the United States, or of any other country, or the parent or the subsidiary of a financial institution. The term includes an entity that disposes of records.

*Id.* § 1798.80(a). "Although the term 'business,' when used in legislation, is not necessarily limited to activities engaged in for profit, it is nevertheless confined to activities engaged in by private entities, unless a contrary intent is apparent from the statutory language." *Sacramento Mun. Util. Dist. v. Cnty. of Solano*, 54 Cal. App. 4th 1163, 1169 (1997) (internal citations omitted) (affirming judgment that California Revenue and Taxation Code section 7284 excluded governmental activities); *see also Brennon B. v. Superior Court*, 13 Cal. 5th 662, 674-80 (2022) (holding that a public school district is not a "business establishment" under the Unruh Act).

Second, all indicia of legislative intent confirm that section 1798.82 does *not* apply to public entities like the County. The legislative record confirms that public agencies are outside the scope of section 1798.82. *See, e.g.*, 2021 Legis. Bill Hist. CA A.B. 825, California 2021-2022 Reg. Sess., Amendment to Bill No. 825, Aug. 28, 2021, at p. 6 (noting that while other California statutes and Civil Code section 1798.82 both "govern data breach notification requirements" in similar ways, "the former applies to public agencies and the latter to persons or businesses"). Applying the canons of statutory interpretation discussed above, this legislative intent is also manifested in the statutory references to "local government" in other provisions that do not create liability. *See* Cal. Civ. Code §§ 1798.80(e) (excluding information that is made publicly available from "local government records" from the definition of "personal information"), 1798.81.5(d)(4) (same), 1798.82(i)(1) (same); 1798.81.5(a)(1) (stating that the CCRA's "purpose . . . is to encourage *businesses* that own, license, or maintain personal information about Californians to provide reasonable security for that information") (emphasis added); *SEC*, 322 F.3d at 656 ("the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words").

The Court should therefore dismiss the section 1798.82 claim without further leave to amend.

### 3.      Plaintiff has not stated a viable California Government Code § 815.6 claim

Count Six (ECF 68 at ¶¶ 434-452) fails to state an actionable violation of section 815.6.

Section 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity for failure to discharge a duty imposed by an enactment:  (1) the enactment must impose a mandatory, not discretionary, duty; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.  *County of Los Angeles v. Superior Court*, 102 Cal. App. 4th 627, 638-39 (2002).  A mandatory duty is an obligatory duty that a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses; and not every statute that uses the word "shall" is obligatory rather than permissive.  *MacDonald v. Calif.*, 230 Cal. App. 3d 319, 327-28 (1991).  Thus, the enactment "must require, rather than merely authorize or permit, that a particular action be taken."  *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000).  Whether an enactment imposes a mandatory duty is a question of law.  *State Dept. of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 349 (2015).

In her 4AC, Plaintiff alleges that the County was subject to the mandatory duties under the following statutes:  (a) 42 U.S.C. § 1320d-6; (b) 45 C.F.R. § 164.508; (c) 45 C.F.R. § 164.502; (d) California Civil Code § 56.10; (e) California Civil Code § 56.101; (f) California Civil Code § 1798.82; (g) California Civil Code § 1798.100; (h) California Civil Code §§ 1709 and 1710; and (i) 18 U.S.C. § 2510 et seq.  ECF 68 at ¶ 436; *see also id.* at ¶ 444 (repeating the alleged duties of Civil Code § 56.101).  But none supports a Government Code section 815.6 claim, as shown below.

#### a.      42 U.S.C. § 1320d-6, 45 C.F.R. § 164.508, and 45 C.F.R. § 164.502

These sources, alleged in subparagraphs (a), (b), and (c), state HIPAA's Privacy Rule.[8]  But, as a matter of law, HIPAA does not give rise to a private right of action against the County.

---

[8]  *See, e.g.*, *Belinda K. v. Baldovinos*, No. C 10-02507 PSG, 2011 U.S. Dist. LEXIS 11692, *2 (N.D. Cal. Feb. 1, 2011) ("The Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d 'HIPAA') provides that covered health care providers may only use or disclose protected health information under certain circumstances defined by the regulations promulgated under HIPAA.  *See* 45 CFR § 164.502(a))"); *see also* https://www.hhs.gov/hipaa/for-professionals/privacy/index.html#:~:text=The%20HIPAA%20Privacy%20Rule&text=The%20Privacy%20Rule%20is%20located,160%2C%20162%2C%20and%20164.

Although it is "section 815.6, not the predicate enactment, that creates the private right of action," *Haggis*, 22 Cal. 4th at 499-500 (emphasis removed), California courts have rejected section 815.6 claims based on predicate enactments demonstrating a legislative intent *not* to create a private right of action.  *Dep't of Corps. v. Superior Court*, 153 Cal. App. 4th 916, 935 (2007) ("*DOC*").

Thus, in *DOC*, the court concluded that the demurrer to a section 815.6 claim based on California Corporations Code section 25612 should have been sustained without leave to amend because the Legislature had evinced its intent not to create a private right of action under that statute:

> Of course, a specific legislative intent need not appear in section 25612 to create a private right of action to enforce that section as it is Government Code "section 815.6, not the predicate enactment, that creates the private right of action." (*Haggis*, *supra*, 22 Cal.4th at pp. 499–500, italics omitted [rejecting any requirement that the "enactment establishing a mandatory duty *itself* manifest an intent to create a private right of action"]; see *Walt Rankin & Associates, Inc. v. City of Murrieta*, *supra*, 84 Cal.App.4th at p. 614 [same].)  Here, however, ***it is not the absence of a legislative intent in section 25612 that concerns us, but rather the presence of a clear and explicit legislative intent that a violation of section 25612 does not give rise to any private right of action*. . . . *The Legislature did just that here, and we are bound to honor its wishes*.** (*Toney*, *supra*, 32 Cal.4th at p. 232 ["If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs'"].)
>
> In sum, . . . ***we conclude that the Legislature intended***: (i) that the Commissioner's actions with respect to section 25612 would be discretionary and not subject the DOC to liability under Government Code section 815.6; and (ii) ***that enactment of section 25612 would not create any private right of action against the DOC***. *As a result of either of these conclusions, and certainly both, liability is unavailable as a matter of law on the investors' claim for the DOC's alleged violation of section 25612*.

*Id.* (emphasis added).

Similarly, in *Delux Pub. Charter, LLC v. Cnty. of Orange*, the court dismissed a section 815.6 claim alleging a county's failure to discharge obligations under the ANCA, ADA, and Grant Assurances because the plaintiff "does not have a private right of action to enforce these federal laws" and "insofar as much as [its] Section 815.6 claim relies on ANCA, ADA, and the Grant Assurances, the claim fails."  No. SACV 20-2344 JVS (KESx), 2022 U.S. Dist. LEXIS 235563, **31-32 (C.D. Cal. Oct. 31, 2022).  "Without evidence of a congressional intent to create both a private right and a private remedy, a private right of action does not exist, and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."

1    *UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018) (quotation omitted).

2    In the same vein, courts have consistently noted Congress' intent *not* to create a private right

3    of action under HIPAA.  *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009) ("HIPAA does

4    not provide any private right of action."); *Poli v. Mt. Valley's Health Ctrs., Inc.*, No. 2:05-cv-2015-

5    GEB-KJM, 2006 U.S. Dist. LEXIS 2559, *13 (E.D. Cal. Jan. 11, 2006) ("By delegating enforcement

6    of HIPAA to the Secretary of Health and Human Services, ***Congress evinced an intent to preclude***

7    ***enforcement by private individuals***.") (emphasis added) (citing *Alexander v. Sandoval*, 532 U.S.

8    275, 286-287 (2001) ("The express provision of one method of enforcing [a statute] suggests

9    Congress intended to preclude others.")); *Univ. of Colo. Hosp. Auth.  v. Denver Publ. Co.*, 340 F.

10   Supp. 2d 1142, 1145 (D. Colo. 2004) (holding that the HIPAA statutory text and structure, including

11   its provided method for enforcing prohibitions, display no intent to create a private right of action or

12   remedy.)  Indeed, no published decision has recognized a section 815.6 claim predicated on HIPAA

13   obligations.  To the contrary, courts have rejected similar pass-through claims predicated on HIPAA.

14   *See, e.g.*, *Cunnington v. Tootell*, No. 18-CV-01530 LHK (PR), 2018 U.S. Dist. LEXIS 85981, *3

15   (N.D. Cal. May 21, 2018) (dismissing 42 U.S.C. § 1983 claim predicated on HIPAA because "there

16   is no private right of action under HIPAA" and "only the government can bring a claim against a

17   medical provider for a violation of HIPAA"); *Huling v. City of Los Banos*, 869 F. Supp. 2d 1139,

18   1154 (E.D. Cal. 2012) ("Because . . . HIPAA provides no private right of action, it cannot form the

19   basis of a section 1983 claim.") (internal citations omitted).

20   In sum, Plaintiff cannot enforce any HIPAA-created obligations through section 815.6.

21   **b.    California Civil Code sections 56.10 and 56.101**

22   These alleged duties, summarized in subparagraphs (d) and (e) of paragraph 436, are already

23   alleged in Plaintiff's affirmative counts under those same statutes.  *See* ECF 68 at ¶¶ 384-392, 393-

24   400.  But no new allegations about the County's obligations, the County's supposed breach, or

25   Plaintiff's claimed damages supports Count Six.  *Compare id. with* ¶¶ 434-452.  As a result,

26   Plaintiff's section 815.6 claim is impermissibly duplicative and should be dismissed as such.  Courts

27   in this Circuit have repeatedly dismissed derivative or cumulative section 815.6 claims under these

28   or similar circumstances.  *See, e.g.*, *Roy v. Cnty. of Los Angeles*, No. CV 12-09012-BRO (FFMx),

2015 U.S. Dist. LEXIS 187387, **13-16 (C.D. Cal. Nov. 20, 2015) (granting motion to dismiss with prejudice where plaintiffs' causes of action for negligence and violation of section 815.6 "rely on the identical allegations of duty, breach, causation, and damages" and were therefore "duplicative and it is unnecessary for Plaintiffs to maintain both causes of action") (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (affirming dismissal of cause of action as duplicative)); *Baker v. County of Sonoma*, No. C-08-03433 EDL, 2009 U.S. Dist. LEXIS 14831, **24-27 (N.D. Cal. Feb. 10, 2009) (granting motion to dismiss either Government Code section 845.6 claim or section 815.6 claim predicated on the same alleged duties because "Defendants have demonstrated that the Sixth and Seventh Causes of Action state the same grounds for liability" and ordering consolidation of the allegations "into one cause of action").  This Court should do the same.

### c.  California Civil Code section 1798.100

On this alleged duty, Plaintiff alleges only that the statute "prohibits businesses from collecting and using personal information without properly disclosing those uses to the public." ECF 68 at ¶ 436(g).  At the outset, this single conclusory assertion does not identify—much less with the required particularity—which subsection of this statute is at issue.  Regardless, the statute—like the rest of the CCPA—applies only to a covered "business."  The onerous and detailed definition of "business" is set forth in Civil Code section 1798.140.  Plaintiff has not pled a single fact to show how the County is a covered "business" within the meaning of the CCPA, nor could she.  Therefore, section 1798.100 cannot support a section 815.6 claim against the County.

### d.  California Civil Code sections 1709 and 1710

Civil Code section 1709, entitled "Fraudulent deceit," provides, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  Cal. Civ. Code § 1709.  Section 1710 merely defines "deceit" as used in section 1709.  *Id.*, § 1710.  But neither statute imposes a mandatory duty on the County.  Instead, these statutes merely codify common law theories, for which public entities are immune from liability under Government Code section 815.  *See, e.g.*, *Eastburn v. Reg'l Fire Protection Auth.*, 31 Cal. 4th 1175, 1183 (2003) (holding that the general liability provisions in California Civil Code section 1714 did not state specific obligations sufficient to support Government Code section

815.6 liability).  "California Civil Code section 1710 imposes liability for 'deceit,' but, following the holding in *Eastburn*, this statute does not abrogate the general immunity found in Government Code section 815."  *Lockhart v. Cnty. of Los Angeles*, 2007 U.S. Dist. LEXIS 119102, *38 (C.D. Cal. Oct. 16, 2007) (granting motion to dismiss with prejudice).  Therefore, these statutes cannot support liability against the County under Government Code section 815.6.

### e.   Civil Code section 1798.82 and 18 U.S.C. 2510 et seq.

As shown above, the County cannot be liable for the violations of these statutes, as alleged by Plaintiff.  *See* Parts III(C), III(D)(2), *supra*.  These alleged violations thus cannot serve as a basis for section 815.6 liability because they do not "impose a mandatory, not discretionary, duty" on the County.  *County of Los Angeles*, 102 Cal. App. 4th at 638-39.  And if those predicate theories were allowed to proceed, Plaintiff's section 815.6 claim would be impermissibly duplicative.

Because all grounds for Plaintiff's section 815.6 claim fail, the claim should be dismissed.

### 4.   Plaintiff May Not Recover Punitive Damages against the County

Plaintiff seeks punitive damages against the County.  ECF 68 at ¶¶ 382, 398, 417, 451, Prayer for Relief, § E; *see also* ¶ 339(d) (alleging that "punitive" damages is a common question for class certification).  But, as a matter of California law, the County is not liable for punitive damages.

"Notwithstanding any other provision of law, a public entity is not liable for damages under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  Cal. Gov. Code § 818.  Despite this prohibition, Plaintiff expressly alleges that the County "is guilty of oppression, fraud, or malice as defined in Cal. Civ. Code 3294."  ECF 68 at ¶ 417.  But the Ninth Circuit has reaffirmed that, "[i]n California, a public entity is not liable for punitive damages."  *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1012 (9th Cir. 2014).  Sound reasons support this rule:  punitive damages "further drain the public fisc, create a liability that will be borne not by the immediate wrongdoers but taxpayers, and may not effectively achieve the goals of retribution and deterrence . . . ."  *Los Angeles Unified Sch. Dist. v. Superior Court*, 14 Cal. 5th 758, 770 (2023).

"Courts in this district have . . . dismissed claims for monetary relief that were barred as a matter of law under Rule 12(b)(6)."  *Doe v. Regents of the Univ. of Cal.*, No. 21-cv-09605-LB, 2022

1   U.S. Dist. LEXIS 49087, *13 (N.D. Cal. Mar. 20, 2022) (citations omitted); *see also Comm. for*

2   *Immigrant Rights v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1208 (N.D. Cal. 2009) (dismissing

3   request for punitive damages against county defendants as barred by Government Code section 818).

4   Plaintiff's request for punitive damages in this case similarly fails.

5                               **IV.    CONCLUSION**

6           For the foregoing reasons, the County respectfully requests that the Court dismiss this action

7   for lack of subject matter jurisdiction or, in the alternative, dismiss the claims specified above.

8   Dated:  August 30, 2024                    Respectfully submitted,

9                                              TONY LOPRESTI
                                               COUNTY COUNSEL
10

11                                     By:  */s/ Xavier M. Brandwajn*
                                           XAVIER M. BRANDWAJN
12                                         Deputy County Counsel

13                                         Attorneys for Defendant
                                           COUNTY OF SANTA CLARA
14  3086775

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant County of Santa Clara's Notice of Motion and                          23CV04411WHO
Motion to Dismiss Plaintiff's Fourth Amended Complaint